IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOHN REPPY and KAREN REPPY                                              PLAINTIFFS

V.                              CASE NO. 5:23-CV-5227

CENLAR FSB, INC.;
CITIMORTGAGE, INC.; and
MICKEL LAW FIRM, P.A.                                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Now before the Court are a Motion to Dismiss (Doc. 8) and Brief in Support (Doc. 9) filed by Separate Defendant Mickel Law Firm, P.A., and a Response in Opposition (Doc. 18) and Brief in Support (Doc. 19) filed by Plaintiffs John and Karen Reppy. On February 29, 2024, the Court conducted a hearing on the Motion with all counsel present and entertained oral argument. For the reasons explained herein, the Motion is **GRANTED IN PART AND DENIED IN PART**.

### I.   BACKGROUND

This case concerns an attempted nonjudicial foreclosure action. The Plaintiffs are homeowners John and Karen Reppy, and the Defendants are Cenlar, FSB, Inc., the servicer of the Reppys' home mortgage loan; CitiMortgage, Inc., the owner of the loan; and Mickel Law Firm, P.A., the law firm that Cenlar hired to assist with the foreclosure. Defendants removed the case from the Circuit Court of Benton County, Arkansas, to this Court on December 12, 2023. *See* Doc. 2. The Complaint (Doc. 3) brings claims for breach of contract and for violations of the Arkansas Statutory Foreclosure Act ("ASFA"), the Real Estate Settlement Procedures Act ("RESPA"), the Arkansas Deceptive Trade

1

Practices Act ("ADTPA"), the Fair Debt Collection Practice Act ("FDCPA"), and the Arkansas Fair Debt Collections Practices Act ("AFDCPA"). The only claims asserted against Mickel Law Firm are for alleged violations of the ASFA, the FDCPA, and the AFDCPA.

The Complaint alleges that Mickel Law Firm, acting at the behest of its client Cenlar, sent the Reppys three foreclosure-related letters, all of which are attached to the Complaint and are generally described as follows:

(1) a letter dated July 10, 2023, notifying the Reppys of the mortgage debt they allegedly owed, including identifying details about the loan, demanding payment (e.g., "Contact us about your payment options."; "Make your check payable to Cenlar FSB."), and providing instructions on how to dispute the debt, (Doc. 3, pp. 186–88);

(2) a letter dated August 7, 2023, attaching a document entitled, "Notice of Default and Intention to Sell," *id.* at pp. 191–92; and

(3) a letter dated August 30, 2023, attaching a document entitled, "Amended Notice of Default and Intention to Sell," *id.* at pp. 201–02.

Mickel Law Firm offers three arguments in favor of dismissal. First, it maintains that all three claims against it should be dismissed pursuant to Arkansas Code § 16-22-310, which provides immunity to attorneys and their law firms who are sued for non-tortious acts by those not in privity with them (hereinafter, the "Attorney Immunity Statute"). Second, Mickel Law Firm contends it does not qualify as a "debt collector" under the FDCPA. And third, Mickel Law Firm maintains that all claims against it are moot because the nonjudicial foreclosure action was ultimately cancelled.

## II.   LEGAL STANDARD

To survive dismissal under Rule 12(b)(6), the "complaint must contain sufficient

2

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678)). In ruling, the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the nonmoving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quotation marks omitted). However, when considering such a motion, "the court generally must ignore materials outside the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). The only exceptions to the rule involve "materials that are part of the public record or do not contradict the complaint" and documents "necessarily embraced by the pleadings." *Id.* (quotations and citations omitted).

### III.   DISCUSSION

#### A.   Arkansas's Attorney Immunity Statute

Arkansas Code § 16-22-310 states in relevant part:

> No person licensed to practice law in Arkansas and no partnership or corporation of Arkansas licensed attorneys . . . shall be liable to persons not in privity of contract . . . for civil damages resulting from acts, omissions, decisions, or other conduct in connection with professional services performed . . . except for: (1) Acts, omissions, decisions, or conduct that constitutes fraud or intentional misrepresentations . . . .

Ark. Code Ann. § 16-22-310(a). In addition, the same statute at subpart (c) explicitly references the ASFA, codified at Arkansas Code § 18-50-101, and makes clear that the ASFA's provisions "shall not expand the liability of the attorney . . . or the firm in which

3

the attorney is a member of partner *beyond the liability provided in this section.*" *Id.* at § 16-22-310(c) (emphasis added).

The parties agree that the Reppys were not in privity with Mickel Law Firm at any point. The Complaint also makes clear that Mickel Law Firm's alleged violations of the ASFA and the AFDCPA were undertaken "in connection with professional services performed" for its client, Cenlar. The law firm was hired to collect a mortgage debt from the Reppys and initiate a nonjudicial foreclosure action against them if the debt was not paid.

Paragraphs 68–70, 77, and 81 of the Complaint state the facts that pertain specifically to Mickel Law Firm. Importantly, the Reppys do not allege that Mickel Law Firm *knew* they did not owe a debt and yet demanded payment anyway. Therefore, even if all facts alleged in the Complaint are true, those facts do not plausibly show that Mickel Law Firm's acts in demanding payment for a debt were fraudulent in nature or constituted intentional misrepresentations of fact. The Reppys only accuse Mickel Law Firm of violating statutes, and "the violation of a statute is only evidence of negligence" under Arkansas law. *Central Okla. Pipeline, Inc. v. Hawk Field Servs., LLC*, 2012 Ark. 157, at *17 (2012). The Court concludes that Mickel Law Firm is immune from suit for alleged violations of the ASFA, such that dismissal of that claim is appropriate. *See Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1248 (8th Cir. 2006) (noting that an ASFA claim against a mortgagee's law firm merited dismissal under § 16-22-310 where the law firm was not in privity with the plaintiff and did not engage in fraud while assisting the mortgagee with a statutory foreclosure).

The AFDCPA claim is similarly subject to dismissal under the Attorney Immunity Statute, as the Reppys' counsel stipulated during the motion hearing. However, as the Court will discuss in the following section, the FDCPA claim is not subject to the same analysis because federal law preempts the Attorney Immunity Statute. *See Born v. Hosto & Buchan, PLLC*, 2010 Ark. 292, at *15 (2010) (acknowledging that Arkansas attorneys are not immune from claims under the FDCPA); *see also Loftis v. Credit Acceptance Corp.*, 2011 WL 976621, at *2 (E.D. Ark. Mar. 18, 2011) ("The immunity provided by Ark. Code Ann. § 16–22–310 does not extend to claims brought against [a law firm] under the FDCPA. The FDCPA preempts the state immunity statute.").

### B. FDCPA Liability

The FDCPA was enacted to prevent abusive debt collection practices. It governs the conduct of "debt collectors" in relation to any attempt to collect a debt and specifically prohibits "false, deceptive, or misleading representation or means in connection with the collection of any debt" and "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §§ 1692a, 1692e, 1692f.

Mickel Law Firm contends that the United States Supreme Court in *Obduskey v. McCarthy & Holthus, LLP* already determined as a matter of law that law firms hired to pursue nonjudicial foreclosure actions are not considered "debt collectors" under the FDCPA. 139 S. Ct. 1029 (2019). However, a close reading of *Obduskey* reveals that the holding is not quite as Mickel Law Firm describes. In *Obduskey*, a law firm mailed a letter to a homeowner advising that it had been "instructed to commence foreclosure," and included in the letter certain information about the amount owed on the loan and the name

of the creditor. *Id.* at 1035. The Court made a preliminary finding that the letter "and other correspondence from [the firm] was required under state law." *Id.* This was an assumption critical to the Court's analysis.

The Court then explained that there were two parts to the statutory definition of a "debt collector" under the FDCPA. The first part, which the Court labeled the "primary definition," appeared generally to define any business engaged in nonjudicial foreclosure proceedings as a debt collector "for all purposes." *Id.* at 1036. After all, "a home loan is an obligation to pay money, and the purpose of a mortgage is to secure that obligation." *Id.* But the Court then moved on to the second part of the definition, which focused on "the principal purpose" of the debt collection activity. *Id.* at 1037. The second part of the definition appeared to exempt those who "no more than enforce security interests." *Id.* at 1037. The legislative history of the Act shows Congress did not intend to sweep into the definition "those who engage in only nonjudicial foreclosure proceedings" to enforce a security interest. *Id.* at 1038. Accordingly, the Court concluded that a law firm that only sends communications to debtors to enforce a security interest in nonjudicial foreclosure proceedings is not a "debt collector" under the FDCPA—*provided that* "the notices sent by [the law firm] [a]re antecedent steps *required* under state law to enforce a security interest." *Id.* at 1039 (emphasis added).

In the case at bar, the Reppys allege—and Mickel Law Firm does not dispute, *see* Doc. 9, p. 4—that the July 10 letter was *not* a communication that Arkansas nonjudicial foreclosure law required to be sent to debtors. Mickel Law Firm admits that it sent the letter "out of an abundance of caution, and because its clients request Mickel to do so."

6

*Id.*; *see also* Ark. Code Ann. § 18-50-104 (procedures required for nonjudicial foreclosure).

There are several aspects of the July 10 letter that would indicate its true purpose was debt collection, rather than the enforcement of a security interest. The letter explicitly states: "<u>THIS IS A COMMUNICATION FROM A DEBT COLLECTOR.  THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE</u>." (Doc. 3, p. 187) (emphasis in original). It then goes on to describe ways the recipient of the letter may make payments to Mickel Law Firm in satisfaction of the debt. *Id.* ("ANY PAYMENT MADE BY YOU MUST BE BY CASHIER'S CHECK, MONEY ORDER, OR OTHER CERTIFIED FUNDS. NO PERSONAL CHECKS CAN BE ACCEPTED."). The letter ends by offering the debtor certain check-the-box options, including one stating, "I enclosed this amount: $_____." *Id.* at p. 188. Several district courts have been disinclined to dismiss an FDCPA claim against a law firm when the facts are similar to the ones in the instant case. *See, e.g.*, *Sevela v. Kozeny & McCubbin, L.C.*, 2019 WL 2066924, at *4–5 (D. Neb. May 2, 2019) (distinguishing the facts in *Obduskey* and denying a law firm's Rule 12(c) motion after noting that letters a homeowner might interpret as an attempt to collect a debt—backed by the threat of foreclosure and not required by Nebraska law—stated a claim under the FDCPA); *Cooke v. Carrington Mortg. Servs.*, 2019 WL 3241128, at *2 (D. Md. July 18, 2019) ("Carrington has not identified any provision of Maryland law that required this conduct to enforce its security interest . . . . Therefore, *Obduskey* does not except Carrington from the full coverage of the FDCPA and thus does not provide a basis for dismissal of any of Cooke's

FDCPA claims.") (emphasis in original); *Gagnon v. Hal P. Gazaway & Assocs., L.L.C.*, 2019 WL 4539926, at *2–3 (D. Alaska Sept. 19, 2019) (noting that a law firm's letter was not required by Alaska's nonjudicial foreclosure laws and finding that, "[g]iven the carefully cabined discussion in *Obduskey* . . . the Letter does not escape scrutiny under FDCPA").

When determining whether "certain statements or conduct are in connection with a collection of a debt" under the FDCPA, the Eighth Circuit uses the "animating purpose test." *Heinz v. Carrington Mortgage Servs., LLC*, 3 F.4th 1107, 1112 (2021). "Under this test, for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *Id.* (citation and quotation marks omitted). The Court finds the Reppys have plausibly alleged that the animating purpose of the July 10 letter was to induce payment of a debt. Therefore, the FDCPA claim survives Rule 12(b)(6) scrutiny.

### C. Mootness

The final argument by Mickel Law Firm is that all claims against it are now moot in light of the cancellation of the foreclosure action and public sale. The Reppys respond:

> The violations and injury alleged by Plaintiffs do not disappear with the cancelling of the foreclosure. Further, the Reppys do not have any less stake in the outcome of this case simply because, at the moment, their home is not scheduled to be sold at a foreclosure sale. To the contrary, the Plaintiffs suffered and alleged real and cognizable harm because of Mickel's disregard for the law which has not been remedied by the cancellation of the sale.

(Doc. 19, p. 9).

The Court agrees that the Reppys have plausibly asserted that they suffered at least emotional damage as a result of Mickel Law Firm's alleged violations of the FDCPA,

8

as specified in Paragraphs 105 to 106 of the Complaint. The FDCPA permits recovery of "any actual damage" a consumer sustains as a result of a violation of the Act, and emotional distress appears to qualify as "actual damage." 15 U.S.C. § 1692k(a)(1). Accordingly, the FDCPA claim is not moot.

## IV.  CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Mickel Law Firm, P.A.'s Motion to Dismiss (Doc. 8) is **GRANTED IN PART AND DENIED IN PART**. The ASFA and AFDCPA claims are dismissed pursuant to Ark. Code Ann. § 16-22-301, and the FDCPA claim will remain for further litigation.

**IT IS SO ORDERED** on this 5th day of March, 2024.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE